UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PETER JANANGELO, JR., | Case No. 2:16-CV-906 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION, | |
| Defendant(s). | |

Presently before the court is defendant Treasury Inspector General for Tax Administration's ("TIGTA") motion for summary judgment. (ECF No. 12). Plaintiff Peter Janangelo, Jr. ("Janangelo") filed a response (ECF No. 13), to which TIGTA replied (ECF No. 17).

Also before the court is Janangelo's motion for summary judgment. (ECF No. 14). TIGTA filed a response (ECF No. 18), to which Janangelo replied (ECF No. 23).

**I.    Background**

The present case stems from a letter Janangelo filed with TIGTA on November 3, 2015, detailing a Freedom of Information Act ("FOIA") request. (ECF No. 12). The FOIA request sought "a copy of the TIGTA Report concerning . . . TIGTA Complaint #55-1409-0099-C." (ECF No. 12-2 at 6).[1]

---

[1] TIGTA complaints, investigations, and reports are terms of art that describe specific internal TIGTA documents. (ECF No. 12-1 at 2). A TIGTA complaint refers to "an allegation of criminal or administrative misconduct." (ECF No. 12-1 at 2). Once received, the TIGTA complaint is assigned to a special agent who gathers evidence in order to make a "determination whether the information supports the need to convert the complaint into an investigation." (ECF No. 12-1 at 2). If an investigation is warranted, the special agent will continue collecting evidence

**James C. Mahan**
**U.S. District Judge**

The TIGTA complaint #55-1409-0099-C ("TIGTA complaint") came as a result of a congressional inquiry from Representative Joseph Heck ("Heck"). (ECF No. 12-2 at 2). Janangelo prompted Heck's inquiry by representing to him alleged misconduct of an IRS employee, Debra W. Thompson ("Thompson"). (ECF No. 12-2 at 6).

On December 9, 2015, TIGTA responded to Janangelo's FOIA request with a *Glomar* response, which stated that "[t]o the extent you are requesting documents pertaining to a third-party, TIGTA can neither admit nor deny the existence of responsive records." (ECF No. 12-2 at 7). TIGTA asserted this *Glomar* response because the "request seeks access to the types of documents for which there is no public interest that outweighs the privacy interests established and protected by the FOIA (5 U.S.C. §§ 552(b)(7)(C) and (b)(6))." (ECF No. 12-2 at 7).

On December 29, 2015, Janangelo appealed TIGTA's *Glomar* response and asserted that he "require[d] a copy of TIGTA's Report of TIGTA Complaint#: 55-1409-009-C to defend [himself] against Debra W. Thompson's July 13, 2015 proposal to terminate [his] employment with the Internal Revenue Service." (ECF No. 12-2 at 11). Janangelo argued that the § 522(b)(6) exception was inapplicable because the FOIA request did not seek personnel files. (ECF No 12-2 at 12). Janangelo also argued that the § 522(b)(7)(C) exception was similarly inapplicable because the FOIA request sought "a copy of TIGTA's Report" regarding the TIGTA complaint—a document not compiled for law enforcement purposes. (ECF No. 12-2 at 12).

On February 5, 2016, TIGTA affirmed its original denial of Janangelo's FOIA request, again citing the § 522 (b)(6) and (b)(7)(C) exemptions. (ECF No. 12-2 at 13).

Janangelo filed the underlying complaint on April 20, 2016, asserting one claim for violation of FOIA. (ECF No. 1).

## II.   Legal Standard & Discussion

### A.   Summary Judgment in FOIA Cases

Because the facts are rarely in dispute in FOIA cases, courts need not analyze whether a genuine issue of material fact exists to grant summary judgment. *Minier v. Central Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996). Rather, the court views the facts in a light most favorable

---

and create a report, which includes a summary of the investigation and a list of evidentiary support to prove or disprove the allegations. (ECF No. 12-1 at 3).

to the requestor and applies a two-step inquiry whereby it must (1) determine whether the agency has conducted a search "reasonably calculated to uncover all relevant documents," and (2) examine whether the withheld information falls within one of the nine FOIA exemptions. *Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985) (quotation marks and citation omitted). "The agency resisting disclosure of requested information has the burden of proving the applicability of an exemption." *Minier*, 88 F.3d at 800 (citing *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979)).

Moreover, a government agency may refuse to confirm or deny the existence of records through a *Glomar* response if the claimed "exemption would itself preclude the acknowledgment of such documents." *Id.* (citing *Hunt v. Central Intelligence Agency*, 981 F.2d 1116, 1118 (9th Cir. 1992)).

### B. Reasonably Calculated Search

For an agency to have satisfied its initial burden, the court must find that an adequate search was conducted. *Zemansky*, 767 F.2d at 571. "In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (citing *Weisberg v. U.S. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The court must give "substantial weight" to agency affidavits so long as the "justifications for nondisclosure 'are not controverted by contrary evidence in the record or by evidence of [the agency's] bad faith.'" *Minier*, 88 F.3d at 800 (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

However, the adequacy of a search is "irrelevant to [a] 'Glomar' response because the issue is whether the [a]gency has given sufficiently detailed and persuasive reasons for taking the position that it will neither confirm nor deny the existence or non-existence of any responsive records." *Wheeler v. C.I.A.*, 271 F. Supp. 2d 132, 141 (D.D.C. 2003). In circumstances where the agency offers a *Glomar* response, the court need only examine the affidavits which explain the agency's refusal. *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1018 (D.C. Cir. 1976).

Here, TIGTA gave a *Glomar* response to Janangelo's FOIA request. (ECF No. 12-2 at 7). TIGTA argues that its *Glomar* response was necessary to protect Thompson's privacy interest in connection with a criminal or administrative investigation. (ECF No. 12 at 7). Janangelo contests

James C. Mahan
U.S. District Judge

TIGTA's *Glomar* response, claiming that TIGTA has already acknowledged the existence of a TIGTA report. (ECF No. 13 at 10). The court disagrees.

Janangelo claims TIGTA acknowledged the report on two separate occasions; however, the court finds neither instance a valid acknowledgment. The first instance is an email chain between Janangelo and special agent Ronald Moller. (ECF No. 13-2 at 19). Janangelo requests that Moller "send [him] a copy of TIGTA's report to U.S. Rep. Joe Heck, D.O. concerning [his] above referenced TIGTA Complaint (#55-1409-0099-C)." (ECF No. 13-2 at 19). In response, Moller states that he "won't be able to provide the information directly to [Janangelo]." (ECF No. 13-2 at 19). The court disagrees with Janangelo's interpretation that the phrase, "the information," is an acknowledgment of an existing report. Rather, as is the case here, "the information" is that a privacy interest is at issue and cannot be disclosed barring an outweighing public interest.

The second instance is contained in Daphne S. Levitas' declaration in support of TIGTA's motion for summary judgment, wherein she states that she is "familiar with the document plaintiff seeks and issues in this lawsuit." (ECF No. 12-2 at 1). The declaration continues to detail the process by which TIGTA conducts investigations and compiles reports. (ECF No. 12-2 at 2). The context within which Levitas' statement is made tends to support TIGTA's position that it was not acknowledging the existence of a particular report, but rather it was acknowledging the existence of TIGTA reports generally. This is clarified in Levitas' second declaration, wherein she states, in relevant part, that she "intended to merely convey that [she is] generally familiar with the purpose and nature of TIGTA Reports of Investigations. The statement . . . was not meant to state that [she] was familiar with the specific [report] sought in this case, to the extent that such [a report] exists." (ECF No 17-1 at 1–2).

Accordingly, the court finds that neither of these instances constitute an acknowledgement by TIGTA regarding the existence of a report. Because the requested information's existence has not yet been acknowledged, a *Glomar* response would be valid so long as it sufficiently details a persuasive reason for claiming the FOIA exemptions.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

### C. FOIA Exemptions

TIGTA argues that disclosure of the sought documents would be an invasion of personal privacy without sufficient public interest and is exempt pursuant to 5 U.S.C. § 552(b)(6) and (b)(7)(C). (ECF No. 12 at 11). To satisfy its burden, the agency may rely on detailed affidavits showing that the information "logically falls within the claimed exemptions." *Hunt*, 981 F.2d at 1119.

To fall within the § 552(b)(6) exemption, TIGTA must show (1) that the information is contained in "personnel and medical files and similar files," and (2) that disclosure of that information would be a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Records that contain information about a particular individual satisfy the first requirement. *Forest Serv. Emp. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008) (citing *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 728 F.2d 1270, 1273 (9th Cir. 1984) (quotation omitted)).

In determining whether the invasion of personal privacy invokes the protections of an exemption, the personal privacy interest at stake must be weighed against the public interest in disclosure. *Hunt*, 972 F.2d at 287. "[T]he *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997) (per curium) (citing *Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994)).

Government employees have a privacy interest in "any file that reports on an investigation that could lead to the employee's discipline or censure." *Hunt*, 972 F.2d at 287 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 376–77 (1976)). Allegations of sexual and professional misconduct, that are associated with the employee's name, can cause "great personal and professional embarrassment." *Id.*

Here, because the TIGTA complaint involved Thompson individually, any further investigation or report would necessarily be a personnel or similar file. *See Forest Serv. Emp. for Envtl. Ethics*, 524 F.3d at 1024.

**James C. Mahan**
**U.S. District Judge**

- 5 -

For the personnel or similar file to be exempt, it must contain information that is a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The TIGTA complaint alleges that Thompson "provid[ed] sexual service to [her current husband] while she was married to another man, in a quid pro quo agreement to advance her IRS career." (ECF No. 12-2 at 11). The complaint revolves around Janangelo's allegations of Thompson's sexual and professional misconduct.

Though these are the specific circumstances the law seeks to protect in providing an exemption for personnel and similar files that contain private, personal information, the court must weigh the privacy interest against the public interest. Janangelo argues that the public has interest in exposing criminal activity including nepotism and retaliation for whistle blowing, and a "scandal worthy" story of discrimination from superiors at the IRS. The court disagrees.

In Janangelo's initial FOIA request letter and in his administrative appeal, he sought the report "to defend [him]self against [Thompson's] . . . proposal to terminate [his] employment with the Internal Revenue Service." (ECF No. 12-2 at 11). Personal interests are given no weight in the balancing of public interest. *See Cameranesi v. Dep't of Defense*, 839 F.3d 751, 765 (9th Cir. 2016).

The remaining allegations of public interest do not suffice to preclude exemption. Exposing criminal activity, including nepotism and retaliation for whistle blowing, is one of the functions of TIGTA. (ECF No. 12-2 at 2). Approving Janangelo's FOIA request based on the stated public interests, which seem pretextual, would bypass the function of internal criminal investigations that allow for protections from unwarranted allegations. Moreover, the privacy interest at stake here is great as the allegations are of a single individual and regard intimate topics which, if disclosed, could cause severe professional and personal embarrassment. *See Hunt*, 972 F.2d at 287.

Because the balance of interests weighs heavily in favor of Thompson's privacy interest, the court finds TIGTA's application of the § 552(b)(6) exemption to be warranted.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

**III.    Conclusion**

In sum, the court finds that TIGTA's denial of Janangelo's FOIA request was appropriate under 5 U.S.C. § 552(b)(6). TIGTA's *Glomar* response was similarly appropriate in its effort to protect the privacy interest and apply § 552(b)(6). The claimed public interest does not outweigh the great private interest; therefore, the exemption applies. Further, the court will dismiss the complaint with prejudice because any amendment to the complaint or claims brought would be futile as the exemption applies to the document and not to Janangelo individually.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant TIGTA's motion for summary judgment (ECF No. 12) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff Janangelo's motion for summary judgment (ECF No. 14) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff Janangelo's complaint (ECF No. 1) be, and the same hereby is, DISMISSED with prejudice.

The clerk is instructed to enter judgment accordingly and close the case.

DATED March 29, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**